IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## CHARLES EDWARD TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C97-53A     Lee Moore, Judge**

_____

**No. W2000-02167-CCA-R3-PC  - Filed June 7, 2001**

_____

The petitioner appeals the post-conviction court's dismissal of his petition for post-conviction relief. Following his jury conviction of aggravated robbery, the petitioner filed a petition for post-conviction relief, alleging, among other things, that he received ineffective assistance of counsel at trial. At the conclusion of an evidentiary hearing, the post-conviction court dismissed the petition, finding that the petitioner failed to meet his burden of showing ineffective assistance of trial counsel. After a careful review, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which L. TERRY LAFFERTY, SR.J., joined. DAVID H. WELLES, J., not participating.

Nathan J. Dearing, III, Dyersburg, Tennessee, for the appellant, Charles Edward Taylor.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner appeals the denial of post-conviction relief on his aggravated robbery conviction, raising the sole issue of whether the post-conviction court erred in finding that he had effective assistance of trial counsel. On appeal, he alleges that trial counsel provided ineffective assistance by his failure to thoroughly prepare and investigate the case. Specifically, the petitioner alleges that trial counsel failed to adequately communicate with him prior to trial; failed to locate a potential alibi witness; failed to call other key witnesses; failed to interview witnesses prior to trial and to zealously cross-examine State witnesses; failed to pursue a defense theory that key State witnesses harbored a grudge against him; and failed to advise him regarding his right to testify at trial. The petitioner argues that these alleged deficiencies in counsel's performance prejudiced the outcome of his trial.

Based upon a careful review, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

## FACTS

On January 10, 1997, the petitioner, Charles Edward Taylor, and two accomplices, Vandy Taylor and Francesca Turner, robbed a Kroger employee at gunpoint as she attempted to make a night bank deposit in Dyersburg, Tennessee. The petitioner was subsequently convicted by a jury in the Circuit Court of Dyer County of aggravated robbery, and sentenced to fifteen years in the Department of Correction. His conviction and sentence were affirmed on direct appeal to this court. See State v. Francesca Turner and Charles Edward Taylor, No. 02C01-9806-CC-00189, 1999 WL 134824 (Tenn. Crim. App. Mar. 9, 1999), perm. to appeal denied concurring in results only (Tenn. Sept. 20, 1999).

On November 18, 1999, the petitioner filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, ineffective assistance of trial counsel. Counsel was appointed to represent the petitioner on November 23, 1999. The post-conviction court held an evidentiary hearing on June 15, 2000, at which time the petitioner conceded that all issues other than his ineffective assistance of counsel claim had either been previously determined or waived for failure to raise them in his motion for a new trial or on appeal. The post-conviction court found "no proof of any deficient performance by Trial Counsel" and denied the petitioner's petition.

The petitioner and his trial counsel were the only two witnesses to testify at the evidentiary hearing. The petitioner testified that trial counsel visited him only once during the eight or nine months he spent in jail awaiting trial. Trial counsel told him that this was his first jury trial, and tried to get him to accept a plea offer from the State. He refused. The petitioner said that trial counsel had "small conversations" with him about trial strategy and witnesses' testimony during the course of the trial. He implied that it made him uncomfortable, stating that he continually told counsel that counsel was the one who had gone to law school, and therefore should be telling him what was going on, instead of asking his advice.

The petitioner complained that trial counsel's inexperience caused him to fail to investigate and locate important witnesses in the case. Trial counsel failed to locate an employee at a "Merry Castle" restaurant near the bank who, the petitioner claimed, could have testified that the petitioner was at the restaurant buying a hamburger when the robbery occurred. The petitioner learned that the owner of the restaurant at the time of the robbery had since died, and that the present owner was unable to provide any information regarding the identity of this potential alibi witness. He believed that if trial counsel had been more experienced, he would have immediately hired an investigator in order to locate the potential alibi witness while her employer was still alive and able to provide her identity. Trial counsel also failed to locate a man in Memphis who, Francesca Turner testified, owned a cap that the police found in her car and that the State argued belonged to the petitioner.

The petitioner asserted that trial counsel failed to interview and call other witnesses who would have been beneficial to his case, and failed to investigate and aggressively cross-examine State witnesses. Trial counsel should have called to the stand the passenger in the victim's car at the time of the robbery, who might have been able to exclude the petitioner as one of the men involved in the robbery. Counsel also should have called the witnesses who testified on the State's behalf at his preliminary hearing, to see if they would offer the same testimony at trial, or whether they would "break" on the stand. The petitioner said that he had learned at trial that one of the State's key witnesses, Vandy Taylor, had been drawing disability for mental incompetence, but trial counsel failed to investigate that fact prior to trial. He said that trial counsel should have called a physician to testify that Vandy Taylor was mentally retarded and that his testimony could not be believed.

The petitioner testified that he wanted to tell the jury that Jimmy and Vandy Taylor, who were brothers, were testifying against him as retaliation for his prior robbery of Jimmy Taylor, but trial counsel told him that it would hurt his case. The petitioner admitted that trial counsel discussed with him the pros and cons of taking the stand. He described the conversation in which trial counsel advised him not to testify:

> He explained something like–this is what I said to [trial counsel]. I was like, "Well, push the issue that the only reason Vandy Taylor is basically saying this is because this is Jimmy Taylor's brother, someone that I robbed–Get out [of] the penitentiary, basically turn my life all the way around, and then get set up on the aggravated robbery, let the jury focus in on that. This is retaliation." He, in so many words, "Well, we don't wanna use that," you know, "Let me do this. You don't have nothing to worry about. If you get on the stand and testify that you already have a robbery, then your [sic] looking at aggravated robbery is gonna hurt you." I said, "Well, how's it gonna hurt me when it's gonna show retaliation?" I said, you know, "How can it hurt me?" "Well, take it from me. I don't want you to get on the stand. I'm giving you my honest opinion."

The petitioner believed that he would not have been convicted had it not been for Vandy Taylor's testimony. Upon reflection, he regretted that he had not taken the stand to explain to the jury where he was at the time of the robbery, and why Vandy Taylor held a grudge against him.

On cross-examination, the petitioner admitted that his claim of having been at the restaurant had been presented at trial through the testimony of a police officer, who testified that the petitioner told him that he had walked from the apartment of a female acquaintance, Stacy Shaw, to the restaurant, and that he had been buying a hamburger when the robbery took place. The petitioner acknowledged that trial counsel had called Shaw as a witness on his behalf, and that Shaw's testimony contradicted the testimony of State witnesses who placed him in a car with Vandy Taylor prior to the robbery. He further admitted that a witness had testified to having seen him with a cap and gun similar to the ones found near him in the vicinity of the robbery, that trial counsel had not

-3-

learned of the Memphis man who allegedly owned the cap found in Ms. Turner's car until trial, and that he had no way of knowing whether the victim's passenger would have cleared him if she had testified.

Trial counsel testified that he had been employed since 1995 as an assistant public defender with the Public Defender's Office of Dyer and Lake Counties. He admitted that the petitioner's case had been his first major case and first jury trial, but said that he felt comfortable handling the case. He met with the petitioner three or four times prior to trial and thoroughly discussed his case with him. They talked about which witnesses were to be called, the petitioner's account of his whereabouts and his belief that key State witnesses held a grudge against him, and the trial strategy that they would utilize. Trial counsel investigated the petitioner's case himself, instead of assigning the work to the investigator on the staff of the public defender's office. As part of his investigation, he went to the Merry Castle restaurant and spoke to a female employee, who denied any knowledge of the robbery and was unable to provide any further information. In retrospect, he admitted that he probably should have also tried to talk with the owner of the restaurant.

Trial counsel indicated that, prior to trial, he had either interviewed or reviewed the statements of the witnesses who testified at trial. He was familiar with Vandy Taylor, having once represented him in an unrelated juvenile proceeding. He was sure that he had told the petitioner that he had had "dealings with Vandy Taylor before," but did not know if he specifically told him that he had represented Taylor as his attorney. Trial counsel indicated that he had not felt the need, because that situation occurred "relatively often" in the public defender's office. Trial counsel said that he knew that Vandy Taylor was going to be the State's star witness, and knew that Taylor was receiving disability for mental impairment. He investigated Taylor's mental competency prior to trial, and called an employee from the social security office to testify that Taylor was receiving disability for mental impairment. When asked if he could have used a mental health expert, rather than the social security employee, to testify regarding Vandy Taylor's mental abilities, trial counsel agreed, stating:

> I would agree with your proposition, in retrospect, on probably several things, you know. I mean, there's always something. I mean, you sit back and think about there's always something you wish you had done differently.

Trial counsel said that he had been aware that Francesca Turner planned to testify that the black leather cap in her car belonged to a man from Memphis. He had not subpoenaed the man because, as he recalled, she had not provided his last name. However, he had brought some similar caps to court and argued that the cap in Ms. Turner's car was not the petitioner's.

Trial counsel also knew from the preliminary hearing that the victim, who testified at trial, had been unable to recognize the petitioner. He said that he had not called the victim's passenger to testify because, since she had not testified at the preliminary hearing, he did not know what her testimony would be and did not want to open up "that can of possible worms." He admitted,

-4-

however, that in retrospect he perhaps should have attempted to interview her prior to trial, to determine if she might have been able to exclude the petitioner as one of the men involved in the robbery.

During their conversations, the petitioner made trial counsel aware of his previous robbery of Jimmy Taylor, and his belief that the Taylor brothers held a grudge against him because of that robbery. Trial counsel said that he discussed with the petitioner his right to take the stand, and advised him not to testify based in part on the trial court's ruling that his prior convictions for forgery and possession of contraband in a penal institution could come in, and the danger that the prior robbery conviction would become known to the jury if the petitioner attempted to testify as to why the witnesses held a grudge against him. Trial counsel explained his reasoning:

> My recollection in regards to it is that I discussed they're going to try to get into your prior record, okay, which had involved Sleepy, Jimmy Taylor, which I basically didn't want that to come out, because that was a robbery, and this was a robbery, and I didn't want those two things to come out, because I thought maybe that might make it look more like he was involved in this. And when it got right down to it, the co-defendant had testified, Francheska [sic], and she just flat-out said she didn't know my client in the least, and she was a college student, had no record, so I was kind of hoping at that point in time that–you know, her prior history, non-history, would rub off, and I definitely didn't want, you know, the possibility of that prior robbery coming out, and plus, we had put on a partial type of alibi defense with Stacy Shaw, and she had no prior record, and had testified sort of–I know you've looked at that partial type of an alibi, and it really wasn't a complete alibi, because he was in the area, but the alibi as far as to where he was, and he couldn't have been picking up Vandy Taylor in an automobile at the time. So, with those factors, I had hoped that the jury would find, look, there's not enough here to go on, particularly since the victim in the matter said, "I never saw this guy here." Okay. "I never saw [the petitioner] involved in the matter." So, given those four basic factors, I , you know, advised–as I recall, I advised him not to testify.

Trial counsel indicated that the ultimate decision not to testify had been made by the petitioner, testifying that if he has a client who insists on taking the stand, "[h]e's going to take the stand."

At the conclusion of the hearing, the post-conviction court ruled that the petitioner had failed to meet his burden of demonstrating ineffective assistance of counsel. In its July 28, 2000, written order denying the petition, the court stated that it found:

-5-

no proof of any deficient performance by Trial Counsel and that the actions of the Trial Counsel were well within the range of competency required. If there were any acts or admissions [sic] by Trial Counsel[,] there was no proof of any prejudice to this Defendant as a result of those acts or admissions [sic].

Following the post-conviction court's dismissal of the petition, the petitioner filed a timely appeal to this court.

## ANALYSIS

**Standard of Review**

The petition for post-conviction relief is governed by the Post-Conviction Act of 1995, which provides that the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The court's conclusions of law, however, are reviewed purely *de novo*. Id. The issue of ineffective assistance of counsel presents mixed questions of law and fact and is therefore reviewed *de novo*, with a presumption of correctness given to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). In Fields, our supreme court made clear that the presumption of correctness accorded the post-conviction court's findings of fact applies to an ineffective assistance of counsel claim:

> As such, a trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. However, a trial court's *conclusions of law*–such as whether counsel's performance was deficient or whether that deficiency was prejudicial–are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions.

Id. at 458 (emphasis in original) (citations omitted).

The standard for establishing ineffective assistance of counsel is well-established. To prove ineffective assistance of counsel at trial, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of his case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). This is a two-pronged test:

-6-

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that counsel's actions or decisions "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

When analyzing a petitioner's allegations of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).

## A. Failure to Communicate

The petitioner first contends that trial counsel was deficient for failing to communicate with him prior to trial, including the fact that he had once represented Vandy Taylor. The petitioner acknowledges, however, that trial counsel's representation of Taylor in an unrelated juvenile proceeding did not constitute a technical conflict of interest in his representation of the petitioner. Trial counsel testified that although he did not specifically tell the petitioner that he had acted as Vandy Taylor's attorney, he informed him that he had had prior "dealings" with him. Trial counsel

additionally testified that he met with the petitioner three or four times prior to trial, and that he discussed his case with him, including the petitioner's claim of having been at the Merry Castle restaurant during the robbery and his theory that key State witnesses were testifying against him as revenge for his robbery of Jimmy Taylor. With regards to the credibility of witnesses or the weight and value to be given their testimony, we defer to the judgment of the post-conviction court. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001) (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). The evidence in this case does not support the petitioner's claim that trial counsel failed to communicate with him. This claim is without merit.

## B. Failure to Investigate, Locate, and Call Witnesses

The petitioner also contends that trial counsel was ineffective for failing to thoroughly investigate and call witnesses who would have been beneficial to his case, and for failing to zealously cross-examine State witnesses. The petitioner first asserts that trial counsel was ineffective for failing to locate the Merry Castle employee who was working at the time of the robbery. He argues that trial counsel should have utilized the investigator who was on the staff of the public defender's office, or talked to the owner of the restaurant, in order to locate the employee. The petitioner claims that if the employee had been located, she could have offered testimony that the petitioner was ordering a hamburger when the robbery occurred, thereby explaining the petitioner's presence in the vicinity and weakening the corroborating evidence in support of the accomplice testimony offered by the State.

The petitioner failed, however, to present any evidence, other than his own assertions, of what testimony this unknown witness would have offered had she been located and brought to testify at trial. To be successful in his ineffective assistance of counsel claim, the petitioner must not only allege prejudice as a result of a deficiency in counsel's performance, but also prove the prejudice by competent evidence. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Competent evidence requires more than the petitioner's own conclusory statements:

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. . . . It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called.

-8-

Otherwise, the petitioner fails to establish the prejudice requirement mandated by <u>Strickland v. Washington</u>.

<u>Id.</u> at 757-58 (footnote omitted). Thus, in the absence of any evidence to show that the witness existed, could have been located but for trial counsel's deficient investigation, and would have offered testimony that was beneficial to the petitioner, the petitioner's claim of ineffective assistance of counsel, based on counsel's failure to investigate and locate the Merry Castle employee, must fail.

The petitioner also argues that trial counsel was deficient for failing to interview or call the passenger in the victim's car, who might have been able to exclude him as a suspect; for failing to locate the Memphis man Ms. Turner testified owned the cap linked to the petitioner; and for failing to call witnesses who testified on the State's behalf at the preliminary hearing. Once again, however, the petitioner failed to support his allegations of prejudice by any competent evidence that these witnesses, had they been called, would have provided testimony beneficial to his case. Without competent evidence of how counsel's alleged deficiencies prejudiced the outcome of his case, <u>see id.</u> at 758, the petitioner cannot meet his burden of demonstrating ineffective assistance of counsel.

Trial counsel testified at the evidentiary hearing that he was prepared for trial and felt comfortable handling the case. He indicated that he had either interviewed or read the written statement of every witness who testified at trial, and that he had been present at the preliminary hearing when a number of the State's witnesses testified. He said that he investigated the case himself, including issues of Vandy Taylor's competency and the ownership of the cap. In dismissing the petition for post-conviction relief, the post-conviction court found that trial counsel had carefully covered the issue of Vandy Taylor's competency at trial, conducted a "very aggressive and rigid cross examination," and generally "performed well within the range of competence demanded of attorneys in criminal cases[.]" The record supports these findings. These claims, therefore, are without merit.

### C. Failure to Investigate Retaliation Theory

The petitioner contends that trial counsel was ineffective for failing to investigate his theory that Vandy Taylor implicated him in the robbery as revenge for the petitioner's earlier robbery of Jimmy Taylor. At the evidentiary hearing, trial counsel testified that he was aware of the circumstances of the petitioner's earlier robbery of Jimmy Taylor, and of the petitioner's belief that the Taylor brothers held a grudge against him because of it. Trial counsel believed, however, that any attempt to prove a retaliatory motive on the part of Vandy Taylor would inevitably lead to a disclosure of the petitioner's prior robbery conviction, which would weigh against him in his present trial. Here, because the petitioner was on trial for robbery, trial counsel had a legitimate reason for not wanting the jury to learn of his prior conviction for the robbery of Jimmy Taylor. The petitioner has failed to show that counsel was deficient for failing to investigate his theory that the Taylor brothers were motivated by thoughts of revenge. This claim is without merit.

### D. Failure to Advise Petitioner of his Right to Testify

Finally, the petitioner argues that trial counsel was ineffective for failing to advise him regarding his right to testify. The record reflects, however, that trial counsel discussed with the petitioner his right to take the stand, and advised him against it based on the danger that his prior convictions would come out. The petitioner himself acknowledged as much, testifying that trial counsel told him he was advising him not to testify based on his "honest opinion" that it would hurt his case. This claim, therefore, is also without merit.

## CONCLUSION

Based upon the foregoing, and our review of the record as a whole, we conclude that the petitioner received effective assistance of trial counsel. Accordingly, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE